UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:17-CV-22462-UNGARO/O'SULLIVAN

CIRCUITRONIX, LLC,

    Plaintiff,

v.

SHENZEN KINWONG
ELECTRONIC CO., LTD., and
KINWONG ELECTRONIC
(HONG KONG) CO., LTD.

    Defendants.
_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Circuitronix, LLC ("CTX") sues Shenzen Kinwong Electronic Co., Ltd. ("Kinwong Shenzen"), and Kinwong Electronic (Hong Kong) Co., Ltd. ("Kinwong HK"), and alleges:

## INTRODUCTION

1. This is an action by CTX against Kinwong Shenzen and Kinwong HK for breach of contract, unjust enrichment and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

2. CTX entered into contracts with Kinwong Shenzen and Kinwong HK concerning the manufacture, distribution and sale of printed circuit boards ("PCBs") and related electronic and industrial components.

3. Over a period of years, Kinwong Shenzen and Kinwong HK violated its contracts with CTX and applicable law by, among other things, failing to adhere to their

1

promises, breaching their fiduciary duties, and using CTX's confidential business information to steal CTX's customers and circumvent CTX.

## PARTIES

**CTX**

4. CTX is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.

5. CTX specializes in the manufacturing and distribution of PCBs for a variety of applications, including automotive, industrial, lighting, and security systems. It also engages in a variety of other lines of business, including plastic injection molded parts, rubber parts, metal parts, PCBA (printed circuit board assembly), and polymer thick film technology for laminate substrates.

6. Rishi Kukreja is the sole member of CTX, and a citizen of Florida.

**Kinwong Shenzen**

7. Kinwong Shenzen is a corporation formed under the laws of, and with its principal place of business in, the People's Republic of China.

8. Kinwong Shenzen is a publically-traded company on the Shanghai Stock Exchange.

9. Kinwong Shenzen manufactures and produces high-density multi-layer PCBs and flexible PCBs, and other related products for the global market under its trade name "Kinwong".

**Kinwong HK**

10. Kinwong HK is a corporation formed under the laws of, and with its principal place of business in, the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong").

11. Kinwong HK is a direct subsidiary of, and is 100% owned by, Kinwong Shenzen.

12. Kinwong HK is also in the business of manufacturing and producing high-density multi-layer PCBs and flexible PCBs, and other related products.

13. Kinwong HK is the successor to Capital Profit Development Ltd. ("Capital Profit") and Kinwong Group, Ltd. ("Kinwong Group").

14. Capital Profit and Kinwong Group are, or were, corporations formed under the laws of Hong Kong.

15. At all material times, just like Kinwong HK and Kinwong Shenzen, Capital Profit and Kinwong Group, were in the business of manufacturing and producing high-density multi-layer PCBs and flexible PCBs, and other related products.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.

17. This diversity action involves damages in excess of $75,000 and is between a citizen of Florida and citizens or subjects of a foreign state.

18. Venue is proper in this district under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida. Further, Kinwong HK contractually agreed to irrevocably submit to jurisdiction and venue in this district.

19. All conditions precedent to bringing this action have occurred or have been waived.

## GENERAL ALLEGATIONS

20. A printed circuit board is a physical base made for connecting electronic components together. PCBs are generally made of a material that does not conduct electricity, such as plastic or fiberglass. Material that conducts electricity, such as copper, is also etched (set in thin lines) inside the board between the layers, or on the surface of the board. This enables the flow of electricity. Electronic components are then attached to the PCB. The metal etched into the PCB allows electricity to travel from one component to another in electrical circuits.

21. PCBs are used in almost all computers and electronic devices today, with a global market of over $60 billion per year.

**The Manufacturer's Agreement**

22. On May 4, 2005, CTX entered into an exclusive Manufacturer's Agreement with Capital Profit, Kinwong HK's predecessor, for the sale, marketing, manufacturing and distribution of PCBs and related components within the "Territory", which is defined as the United States, Canada, Mexico, and South America. *See Exhibit 1*, at ¶3.

23. As the legal successor of Capital Profit, Kinwong HK assumed all of Capital Profit's rights and liabilities under the Manufacturer's Agreement. *See, e.g., Exhibit 2*. Hereinafter, all references to Kinwong HK include Capital Profit as its predecessor.

24. The "Product" to be marketed and manufactured included "any Contract Manufacturing related work or services by Manufacturer or any associated entities." *See Exhibit 1*, at ¶2.

25. Pursuant to the Manufacturer's Agreement, CTX agreed to perform global sales and marketing for Kinwong HK on an exclusive basis for specific customers, or customers otherwise introduced to Kinwong HK by CTX. *See Exhibit 1*, at ¶1.

26. In return, Kinwong HK agreed to manufacture the Product for CTX and the exclusive customers identified by CTX. *See id.*

27. Kinwong HK also agreed that it would accept and fulfill purchase orders for customers identified by CTX based on "the pricing/payment/delivery terms agreed upon by the parties". *See id.* at ¶5.5. Any change to the pricing of the products required six months of advance notice. *See id.*

28. Kinwong HK further agreed not to do business, directly or indirectly, with any customers identified by CTX, other than through CTX as set forth in the Manufacturer's Agreement. In other words, Kinwong HK agreed not to circumvent CTX by selling products directly to the customers obtained through the work of CTX. *See id.* at ¶4.

29. Kinwong HK also agreed that the identity of CTX customers and accounts, and the specifications of their orders including pricing, are confidential and proprietary in nature, are valuable assets of CTX, and are deemed trade secrets of CTX. *See id.* at ¶6.

30. Kinwong HK further agreed not to make any commercial use of confidential information or trade secrets of CTX, without its prior written consent, recognizing that immediate and irreparable damage would result from a breach. *See id.*

31. Kinwong HK also agreed that, if the Manufacturer's Agreement was terminated, the prohibitions on doing business with CTX customers and making commercial use of CTX's confidential information and trade secrets would survive for a period of two years after the termination date. *See id.* at ¶6.1.

32. When CTX marketed the Products for the Manufacturer's Agreement to its customers, the Products were associated with Kinwong Shenzen's globally-recognized brand "Kinwong".

**The Settlement Agreement and Limited Release**

33.     Disputes arose between CTX and Kinwong HK concerning Kinwong HK's compliance with, and performance of, the Manufacturer's Agreement.

34.     To resolve that dispute, on June 1, 2010, CTX entered into a Settlement Agreement and Limited Release (the "Settlement Agreement") with Kinwong Group, Kinwong HK's predecessor. *See Exhibit 3*.

35.     As the legal successor of Kinwong Group, Kinwong HK assumed all of Kinwong Group's rights and liabilities under the Settlement Agreement. *See, e.g., Exhibit 2*. Hereinafter, all references to Kinwong HK include Kinwong Group as its predecessor.

36.     The Settlement Agreement was executed by Mafio Shum ("Shum"), as Kinwong HK's Group Chief Operating Officer. *See Exhibit 3* at p. 6.

37.     Shum was an officer of both Kinwong Shenzen and Kinwong HK, but acted as the representative of Kinwong Shenzen when dealing and communicating with CTX about the Settlement Agreement and compliance therewith.

38.     In addition to Shum, Kinwong Shenzen acted through another agent, Cherry He, in its dealings with CTX.

39.     Cherry He represented herself as the sales manager and representative acting on behalf of Kinwong Shenzen when communicating with CTX.

40.     Cherry He's email communications with CTX relating to the Settlement Agreement were signed by her as a representative of Kinwong Shenzen.

41.     When CTX marketed the Products for the Manufacturer's Agreement and Settlement Agreement to its customers, the Products were associated with Kinwong Shenzen and its globally-recognized brand "Kinwong".

42. The Settlement Agreement replaced and superseded the Manufacturer's Agreement, except to the extent the documents did not conflict, in which event the parties agreed that the Manufacturer's Agreement was to remain in full force and effect. *See id.* at ¶9.

43. The parties' agreed that pricing, quality standards, payment terms, and other commercial terms of the Manufacturer's Agreement were expressly incorporated and included as detailed Schedules in the Settlement Agreement. *See id.* at ¶¶2 and 3.

44. In Paragraph 4 of the Settlement Agreement, Kinwong HK further acknowledged its fiduciary duties to CTX in connection with the customers and accounts listed on "Schedule A" of the Settlement Agreement:

> <u>Fiduciary Duties</u>: Kinwong acknowledges that Circuitronix is reposing a significant amount of trust in Kinwong to act as Circuitronix's agent vis-à-vis the companies listed on Schedule "A", and that when Kinwong has to perform an action for these companies, or when it is communicating directly with these companies, Kinwong is in a superior position than Circuitronix to affect Circuitronix's relationship with these companies.  Accordingly, Kinwong hereby acknowledges that it owes Circuitronix a contractual, common law and statutory duty of good faith, fair dealing, loyalty, and care and hereby represents and warrants that it will use its best efforts to promote and further the Circuitronix's business interests with respect to the companies listed on Schedule A.  Consistent therewith, Kinwong shall subordinate and refrain from acting upon any of its desires that may adversely affect Circuitronix's interest with the companies on Schedule A.  Without limiting the generality of the foregoing, it shall be deemed a breach of the fiduciary duties Kinwong owes Circuitronix, as well as breach of its contractual obligation to act in good faith, if Kinwong does not permit the companies listed on Schedule A to visit its factor(ies), or perform an audit, or if Kinwong refuses to provide any other information or documentation about itself to the companies, all within a reasonable period of time, not to exceed one (1) week, upon receiving such a request.

45. In Paragraph 5 of the Settlement Agreement, Kinwong HK further agreed to not circumvent, or compete against, CTX by unilaterally commencing negotiations for "any type of business transaction" with any of the customers listed on Schedule A of the Settlement Agreement for two years from the date of the last purchase order for that customer:

> Covenant Not to Circumvent: Until May 24, 2012 or, with respect to any particular entity listed on Schedule "A," for two (2) years from the date of the last purchase order filled by Kinwong from that particular entity, whichever comes later, Kinwong, and its parent and subsidiary companies, and each of these entities' affiliates, directors, officers, servants, agents, insurers, attorneys, employees, stockholders, successors, divisions, related companies, survivors, heirs, executors and assigns shall not directly or indirectly commence negotiations to enter into any type of business transaction, or enter into any type of business transaction, with any entity listed on Schedule A, except through Circuitronix, nor shall Kinwong circumvent, attempt to circumvent, avoid, or by-pass Circuitronix in any way. Additionally, instead if Kinwong is approached by a company listed on Schedule "A" it must inform said company that it should contact Circuitronix who is Kinwong's exclusive sales representative, and cease any further dialogue with the company. Moreover, with respect to Kimball Electronics Corporation ("Kimball"), Kinwong shall not circumvent the intents and purposes of this Agreement by selling its products to those of Kimball's customers whom Circuitronix is selling Kinwong's product to Kimball so that Kimball will be able to satisfy its customer's requirements.

(the "Non-Compete").

46. Schedule A of the Settlement Agreement identifies four companies as CTX's exclusive customers: Lear Corporation, Kimball Electronics, TRW, and GE (General Electric).

47. For every breach of the Non-Compete, Kinwong HK agreed that it shall pay CTX $2,000,000 as liquidated damages. *See id*. at ¶6.

48. After signing the Settlement Agreement, in an ongoing scheme to violate the Non-Compete and fiduciary duty clauses, Kinwong HK repeatedly and systematically began breaching the Settlement Agreement by, among other things:

    a. refusing to accept purchase orders for part numbers 3352070CB and 3324690ME in violation of ¶¶2, 3 and 4 of the Settlement Agreement;

    b. refusing to honor and adhere to the pricing terms set forth in the Settlement Agreement, imposing exorbitant price increases, and

      withholding purchase orders in violation of ¶¶2, 3 and 4 of the Settlement Agreement;

c. unilaterally changing credit terms in violation of ¶2 of the Settlement Agreement;

d. attempting to deal directly with CTX customer Kimball Electronics, while falsely denying that it had done so, in violation of ¶¶4 and 5 of the Settlement Agreement;

e. falsely reassuring CTX that it would honor its Non-Compete and fiduciary duty obligations under the Settlement Agreement, when it was not and had no intention of doing so, in order to induce CTX to continue providing valuable confidential information that Kinwong HK could exploit, in violation of ¶¶4 and 5 of the Settlement Agreement;

f. failing to comply with the contractual lead-times, causing CTX to incur premium airfreight costs, in violation of ¶¶2 and 4 of the Settlement Agreement;

g. improperly handling and delaying production of samples which caused CTX to incur significant liabilities for premium freight costs and, in some cases, caused CTX to lose the business because of missed validation windows, in violation of ¶¶2 and 4 of the Settlement Agreement;

h. violating the price terms of the Settlement Agreement with regard to immersion tin cost adder and immersion gold cost adder, in violation of ¶¶2 and 4 of the Settlement Agreement; and

      i.      making several shipments of parts number D-8794705PNP01+0, that had delamination defects, in violation of ¶¶2 and 4 of the Settlement Agreement.

**The Revised Schedule A**

49. On July 7, 2012, representatives of CTX met with representatives of Kinwong Shenzen and Kinwong HK at Kinwong Shenzen's offices in China to discuss resolution of the continuing disputes between the parties, as well as to commit to further or expanded collaborations. Both Kinwong Shenzen and Kinwong HK expressly reaffirmed their commitments to CTX, including their intention to proceed with the Manufacturer's Agreement and Settlement Agreement, and to not compete with CTX through its exclusive customers.

50. On January 4, 2013, in reliance on Kinwong Shenzen and Kinwong HK's representations and assurances of good faith compliance with the Settlement Agreement, CTX disclosed to them an expanded and detailed list of CTX's exclusive customers.

51. CTX's exclusive customer list was used to revise Schedule A of the Settlement Agreement (the "Revised Schedule A"), and to expand the parties' obligations to each other. *See Exhibit 4.*

52. Revised Schedule A specifically identified the following companies as being CTX's exclusive customers:

    a. Kimball Electronics

    b. Lear

    c. GE (General Electric)

    d. Macom

    e. Regal Beloit

    f.    Phillips Medical

    g.    Trane

    h.    Cooper

    i.    Johnson Controls

    j.    GM (General Motors)

    k.    Nissan

    l.    Leoni

    m.    Saturn Electronics

53. Cherry He of Kinwong Shenzen executed the Revised Schedule A on behalf of Kinwong HK.

54. CTX aggressively promoted Kinwong Products to CTX's exclusive customers in accordance with the terms of the Manufacturer's Agreement, Settlement Agreement and Revised Schedule A. However, the breaches and circumvention of CTX to steal its customers continued.

55. By inducing CTX to disclose the companies on the Revised Schedule A and doing business with those customers through CTX for a period of time, Kinwong HK and Kinwong Shenzen were able to access vital confidential information about those companies, such as their pricing, design specifications and other information necessary to steal their business from CTX in violation of ¶¶4 and 5 of the Settlement Agreement.

56. Less than 25 days after agreeing to modify the Settlement Agreement with the Revised Schedule A, Kinwong HK sent a purported notice of termination to CTX, which claimed to terminate the Manufacturer's Agreement as of May 3, 2013. *See Exhibit 2.*

57. Kinwong HK then threatened to disallow CTX customers from auditing its factory, as required by the Manufacturer's Agreement and the Settlement Agreement, unless

CTX shared more confidential information about those customers, including valuable contact details, leaving CTX no choice but to disclose the confidential information to Kinwong HK.

58. The termination notice violated ¶9 of the Manufacturer's Agreement, and Kinwong HK's subsequent actions violated ¶¶4 and 5 of the Settlement Agreement.

**Further Breaches and Sabotage of the Manufacturer's Agreement, Settlement Agreement and Revised Schedule A**

59. On February 5, 2013, notwithstanding the improper termination, Kinwong HK informed CTX that it would continue performing the contracts that were entered into before the termination date, noting: "We take the view that any contract made before the notice termination date will still have to be performed notwithstanding the termination." *See Exhibit 5.*

60. However, Kinwong HK continued to violate ¶¶2, 3, 4 and 5 of the Settlement Agreement and the Revised Schedule A by, among other things:

    a. refusing to permit an audit by Cooper, a CTX exclusive customer listed in the Revised Schedule A;

    b. manufacturing Products for Cooper through a company called Spirit Circuits, which in turn sold the Products to CTX's exclusive customer, Kimball Electronics;

    c. commencing communications with Johnson Controls, one of the CTX exclusive customers listed in the Revised Schedule A;

    d. actively pursuing and successfully recruiting a CTX employee;

    e. placing an employee in CTX to steal proprietary and confidential customer information from CTX;

    f. refusing CTX's request to permit GE a pre-audit inspection;

    g.    refusing CTX's request to bring a Kimball Electronics customer, Brose, for audit;

    h.    refusing to accept and fulfil a number of purchase orders, including purchase orders KIN-000024 and KIN-44500779367, for part numbers E06149600 (E00234105A) and E01202601A;

    i.    delivering defective and non-conforming PCBs that were manufactured using the incorrect laminate;

    j.    unilaterally imposing a credit limit of zero dollars for all purchase orders and a production limit of $600,000, and requiring CTX to prepay for any purchase orders which caused the total amount to exceed $600,000;

    k.    manufacturing and supplying PCBs directly to other exclusive customers of CTX, including (without limitation): Kimball Electronics, General Electric, Brose and Cooper;

    l.    manufacturing and supplying non-conforming products for purchase order E00866502 for CTX customer Lear, and then refusing to accept liability and compensate CTX for the rejected products; and

    m.    otherwise sabotaging the relationship and the Settlement Agreement by not complying with its fiduciary duties of loyalty and care to CTX, and acting adverse to CTX's business interests.

61.    The violations of the Settlement Agreement, which includes the Revised Schedule A, were continuing in nature and recurrent as part of Kinwong HK's scheme to violate the Non-Compete and fiduciary-duty clauses, and to deceive CTX into disclosing confidential information so that they could continuously and repeatedly use that information to steal CTX's clients.

## COUNT I
## Breach of Settlement Agreement
### (Kinwong HK)

62.  CTX realleges Paragraphs 1 through 61.

63.  Kinwong HK entered into a Settlement Agreement with CTX, including the Revised Schedule A.

64.  Kinwong HK materially breached the Settlement Agreement, including Revised Schedule At (*see supra* ¶¶48, 55-61).

65.  Kinwong HK's breaches have caused damage to CTX.

66.  CTX is entitled to recover its damages against Kinwong HK, including liquidated damages for Kinwong HK's breaches as set forth in Paragraph 6 of the Settlement Agreement.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Kinwong HK, for damages, including liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT II
## Unjust Enrichment
### (Kinwong HK)

67.  CTX realleges Paragraphs 1 through 61.

68.  This is an action for unjust enrichment, stated in the alternative, to the extent the Settlement Agreement and the Revised Schedule A to the Settlement Agreement are not enforceable contracts.

69.  CTX conferred a benefit on Kinwong HK, which benefited and continues to benefit from the services provided by CTX under the Settlement Agreement, including Revised Schedule A to the Settlement Agreement.

70. Kinwong HK will be unjustly enriched if it is not required to pay the value of the services provided by CTX.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Kinwong HK, for all damages Plaintiffs incurred as a result of the unjust enrichment, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT III
### Breach of Settlement Agreement - Agency
### (Kinwong Shenzen)

71. CTX realleges Paragraphs 1 through 61.

72. This is an action for breach of contract against Kinwong Shenzen based on agency principles.

73. Kinwong Shenzen and Kinwong HK are closely-related entities sharing common employees, officers, and business names.

74. Both Kinwong Shenzen and Kinwong HK manufacture products for the global market under the brand or trade name "Kinwong".

75. Kinwong HK entered into the Settlement Agreement with CTX, including the Revised Schedule A, as Kinwong Shenzen's agent.

76. The signatory to the Settlement Agreement, Shum, was an officer of both Kinwong Shenzen and Kinwong HK, and acted as the agent of Kinwong Shenzen when dealing and communicating with CTX about the Settlement Agreement and compliance therewith.

77. In addition to Shum, Kinwong Shenzen acted through various other agents in its dealings with CTX, including Cherry He. Each of those representatives' email communications with CTX were signed by them as an officer, employee or representative of Kinwong Shenzen.

78. At all material times, Kinwong HK's actions were controlled by Kinwong Shenzen, and Kinwong HK accepted its role as Kinwong Shenzen's agent when it was negotiating and conferring with CTX, and performing under the Settlement Agreement and Revised Schedule A.

79. Kinwong Shenzen also communicated directly with CTX about the terms of, and compliance with, the Settlement Agreement and Revised Schedule A, and made those representations for itself and on behalf of Kinwong HK as its agent.

80. Kinwong Shenzen performed under the Manufacturer's Agreement, the Settlement Agreement and Revised Schedule A. For example, although CTX's purchase orders since 2012 were sent to Kinwong HK, the fulfilment orders were done in Kinwong Shenzen factories, and communications regarding those orders, including, but not limited to, pricing, delivery, and quality issues, were made by Kinwong Shenzen personnel and managers.

81. After February 1, 2013, all correspondence relating to the Settlement Agreement and Revised Schedule A was by Kinwong Shenzen employees.

82. When CTX marketed the Products for the Manufacturer's Agreement and the Settlement Agreement to its customers, the Products were associated with Kinwong Shenzen and its globally-recognized brand "Kinwong".

83. When CTX was negotiating and conferring with Shum, Cherry He and the other Kinwong Shenzen agents relating to the Settlement Agreement, including the Revised Schedule A, it believed, based on express representations, that it was negotiating and conferring either directly with Kinwong Shenzen, or with Kinwong HK as Kinwong Shenzen's agent.

84. Employees of Kinwong Shenzen and Kinwong HK have emails with a common domain name, [www.kinwong.com](www.kinwong.com), and with similar formats: name@kinwong.com.

85. CTX relied on the representations made by Kinwong Shenzen directly, or by Kinwong HK as Kinwong Shenzen's agent, and changed its position in reliance on those representations to its detriment.

86. CTX's past, present and continuing relations and dealings with Kinwong Shenzen and Kinwong HK are so inextricably intertwined that Kinwong Shenzen and Kinwong HK could be considered, for purposes of this lawsuit, a single entity at law and equity.

87. Directly, and through Kinwong HK as its agent, Kinwong Shenzen, has materially breached the Settlement Agreement, including Revised Schedule A (*see supra* ¶¶48, 55-61).

88. Kinwong Shenzen's breaches have caused damage to CTX.

89. CTX is entitled to recover its damages against Kinwong Shenzen, including liquidated damages for the breaches, as set forth in Paragraph 6 of the Settlement Agreement.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Kinwong Shenzen, for damages, including incidental and consequential damages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT IV
### Unjust Enrichment
### (Kinwong Shenzen)

90. CTX realleges Paragraphs 1 through 61, and Paragraphs 73 through 86.

91. This is an action for unjust enrichment, stated in the alternative, to the extent CTX cannot prove a contractual relationship with Kinwong Shenzen based on agency principles in connection with the Settlement Agreement and Revised Schedule A.

92. CTX conferred a benefit on Kinwong Shenzen, which benefited and continues to benefit from the services provided by CTX under the Settlement Agreement, including Revised Schedule A to the Settlement Agreement.

93. Kinwong Shenzen will be unjustly enriched if it is not required to pay the value of the services provided by CTX.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Kinwong Shenzen, for all damages incurred as a result of the unjust enrichment, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

CTX requests a jury for all triable issues.

*s/ Alan Rosenthal*
Alan Rosenthal
Florida Bar No. 220833
arosenthal@carltonfields.com
Natalie J. Carlos
Florida Bar No. 0146269
ncarlos@carltonfields.com
Carlton Fields
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL  33131
Telephone:    (305) 530-0050

and

Chauncey D. Cole IV
Florida Bar No. 102184
chauncey.cole@coletrial.com
Chauncey Cole, PA
9100 South Dadeland Blvd., Suite 1553
Miami, FL 33156
Telephone:  (786) 497-7053

*Attorneys for Plaintiff, Circuitronix, LLC*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on February 13, 2018, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Alan Rosenthal*
